## BISHOP *v*. HARTMAN.

1. PLEADING—MOTION TO DISMISS—SUPPORTING AFFIDAVIT.

A supporting affidavit is not required for a motion to dismiss a bill of complaint where the motion contains a statement to the effect that the bill of complaint on its face is insufficient and does not state a cause for equitable relief (Court Rule No 17, § 7 [1945]).

2. APPEAL AND ERROR—CHANCERY CASES—MOTION TO DISMISS.

All well-pleaded matters in a bill and amended bill of complaint are to be taken as true for purposes of appeal from order dismissing such bills on motion unsupported by testimony.

3. WILLS—WIDOW'S ELECTION—DEATH.

The right of a widow to elect not to take under her late husband's will is personal with her and ceases at her death (CL 1929, §§ 13084–13086).

4. PLEADING—PROBATE FILES AND RECORDS—INCORPORATION BY REFERENCE.

Probate files and records of decedent's estate, being public records, and referred to in bill to declare testamentary trust invalid were, in practical effect, a part of the pleading (Court Rule No 17, § 5 [1945]).

5. WILLS—ACCEPTANCE BY WIDOW—ESTOPPEL—HEIRS AT LAW.

Where widow accepted the provisions of her husband's will and the same were fully performed as to her by the trustee

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 3 Am Jur, Appeal and Error, § 932.
[3] 57 Am Jur, Wills, §§ 1530, 1531.
[5] 57 Am Jur, Wills, §§ 1543, 1545, 1565.
[5, 6] Revocation of election to take under or contrary to will. 81 ALR 741, 759.
[6] 57 Am Jur, Wills, § 1546.
[6] Revocation of election to take under or contrary to will. 81 ALR 747 *et seq.*
[8] 57 Am Jur, Wills, § 1027.
[9] 21 Am Jur, Executors and Administrators, §§ 488, 490.

and she thereby became estopped to deny the validity of the testamentary trust by the time of her death some 19 years later, the estoppel as to her operates to estop her heirs at law as fully as though they themselves had participated therein.

6. SAME—ADVICE OF TRUSTEE.

Where it is claimed that widow was erroneously advised by the trustee as to her rights under her late husband's will but that she refrained from opposing the will out of respect for the testator's daughter and in order not to cause family discord, it would appear that she knew, regardless of the trustee's advice that she could have opposed the will had she seen fit, her heirs at law would not be entitled to relief on account of such incorrect or fraudulent advice.

7. SAME—ASSIGNMENT OF RESIDUE—TRUSTS.

It is not to be assumed, some 19 years after assigning residue of estate, that probate judge, in making such assignment over to trustee did not first read the will nor have a just comprehension of the terms and meaning of the will, notwithstanding testimony given at hearing on final account was false.

8. EXECUTORS AND ADMINISTRATORS—SETTLEMENT OF ACCOUNTS—CONSTRUCTION OF WILL.

The probate court necessarily has jurisdiction to construe a will where such power is involved in the power to assign the estate of a testator on the settlement of an executor's account.

9. JUDGMENT—RES JUDICATA—ASSIGNMENT OF RESIDUE OF AN ESTATE BY PROBATE COURT.

Order of probate court assigning the residue of testator's estate to trustee which necessitated a construction that the testamentary trust therein created was valid was *res judicata*.

10. ESTATES OF DECEDENTS—HEIRS OF WIDOW OF TESTATOR.

Heirs at law of widow of testator have no greater rights in latter's estate than the widow had at her death.

Appeal from Oakland; Hartrick (George B.), J. Submitted April 14, 1949. (Docket No. 85, Calendar No. 44,412.)   Decided June 6, 1949.

Bill by Josephine A. Bishop, individually and as general administratrix of the estate of Josephine Woodward Johnson, deceased, and others against William Hartman, individually and as trustee of the estate of Byron V. Woodward, deceased, to have construction of will and determination that trust is void. Bill of complaint dismissed on motion. Plaintiffs appeal. Affirmed.

*Roy F. Andes,* for plaintiff.

*Howlett & Hartman (Patterson & Patterson,* of counsel), for defendant Hartman.

*Robert D. Heitsch,* for defendants Lemon.

REID, J. The bill of complaint was filed in this case to obtain a construction of the will of deceased, a declaration and determination that the trust set up in the will of the deceased is void as contravening the statute prohibiting the suspension of the absolute power of alienation of land (CL 1948, §§ 554.14, 554.15 [Stat Ann §§ 26.14, 26.15]), and in violation of the rule against perpetuities, and a determination that plaintiffs Josephine A. Bishop and Earl Johnson by right of representation are entitled to an interest in the estate, and for an accounting.

On motions, the trial court dismissed the bill of complaint. Plaintiffs appeal.

The daughter of deceased and the grandson of deceased, one of the legatees, filed one motion. The other motion was filed by the trustee under the will. The 2 motions were consolidated for the purposes of the argument in circuit court and are treated as consolidated on this appeal.

Plaintiffs request us to treat the motions as insufficient for want of supporting affidavits under Court Rule No 18 (1945), and for that reason to reverse

the decree of the trial court. In each motion there is an express statement to the effect that the bill of complaint on its face is insufficient and does not state a cause for equitable relief, which would indicate that the motions are proper to be considered under Court Rule No 17, § 7 (1945), which does not require supporting affidavits. No testimony was offered in the trial court. The defendants in their separate briefs argue only from facts stated in the bill, with its attached exhibits and documents incorporated therein by reference. Defendants so submitted their case in the lower court. The facts set forth in each motion are facts appearing in the bill, its exhibits and documents incorporated therein by reference.

We find the motions to be proper in form to be the basis of the decree appealed from.

For the purpose of determining this appeal, all well-pleaded matters in the bill of complaint and amended bill are to be taken as true.

Decedent Byron V. Woodward, a resident of Pontiac, Michigan, died testate on September 28, 1928. His will, dated July 23, 1928, was admitted to probate on October 29, 1928. At the time of the death of decedent, his sole heirs-at-law were his widow, Josephine C. Woodward, and his daughter, Nellie M. Lemon.

The pertinent portions of the will of decedent Byron V. Woodward are as follows:

"Fourteenth. I give, bequeath and devise to my wife, Josephine C. Woodward, the use during her natural life of the home I now occupy on Auburn avenue in the city of Pontiac, Michigan, being more particularly described as the north 100 feet of lot 57 of the eastern addition to the city of Pontiac, Michigan, and I further will and direct that my executor and trustee hereinafter named shall keep said premises in good order and repair, and shall pay the

taxes assessed thereon, together with the insurance premiums, out of the income and proceeds from my estate, the same as an expense of the estate, I also give and bequeath to said Josephine C. Woodward the sum of $250 per month for and during the term of her natural life to be paid from the income and proceeds of my estate by my executor and trustee, hereinafter named. I also give and bequeath to said Josephine C. Woodward the use, possession and control of my household goods and furniture, so long as she lives, and I also give to her my Packard automobile, and after the death of Josephine C. Woodward all my household furniture and household effects remaining I give and bequeath to Mrs. Pearl Johnson, I further will and direct that in case the said Josephine C. Woodward so desires, I authorize and empower my said executor and trustee, hereinafter named, to sell the premises, hereinabove mentioned, as my present home, and purchase for her a new home out of the proceeds thereof for her to have the life use thereof, and in case of such sale the difference between the net sale price of my present home and the cost of a new home, if any, shall be equally divided between Pearl Johnson, Josephine A. David, Carrie Lawson, Nellie Lemon and Fred G. King, and I further will and direct that at the death of said Josephine C. Woodward the proceeds of the net sale of my present home, or in the event of a sale thereof and the purchase of a new home, then the new home to be sold at the death of Josephine C. Woodward and the proceeds of the sale thereof, or of either of the said properties, as above set forth, shall at the death of Josephine C. Woodward be equally divided between the said Pearl Johnson, Josephine A. David, Carrie Lawson, Nellie Lemon and Fred G. King.

"Fifteenth. . After all the above and foregoing provisions of my will are carried out or provision made therefor, then all the rest, residue and remainder of my estate, both real and personal, I give, bequeath and devise to Pontiac Trust Company of

Pontiac, Michigan, in trust, however, to hold, manage, invest and reinvest for and during a period of 20 years from and after my death for the following purposes:

"(a) To pay taxes on my real estate and to make necessary and proper repairs, and to keep my rental property in good order and condition.

"(b) To pay from the income and proceeds of my said estate to Nellie M. Lemon, my daughter, the sum of $250 per month, so long as she lives or until the termination of the trust, excepting, however, that if in the judgment of my said trustee the circumstances or situation of the said Nellie M. Lemon requires more than the said $250 per month, then and in that event I authorize said executor and trustee to pay to my said daughter the sum of not to exceed $400 per month, if in its judgment said additional sum is proper and necessary and required for her suitable maintainance and support.

"(c) To pay from the income and proceeds of my estate the provisions, hereinabove made, for my wife, Josephine C. Woodward.

"(d) To pay to Pearl Johnson, wife of Newton Johnson, the sum of $25 per month, so long as she lives, or until the termination of the trust hereinabove created.

"(e) To pay to Frank Lemon, husband of my daughter, Nellie M. Lemon the sum of $50 per month during his natural life, or if he is living until the termination of the trust, hereinabove created.

"(f) In case of the death of my daughter, Nellie M. Lemon, before the expiration of the trust, hereinabove created, then I will and direct that the sum of $250 per month from and after her death to be paid to my grandson, Visco Frank Lemon, and in case of his death, disability or unforeseen circumstances, which in the judgment of the trustee would reasonably require an additional sum, then in that event said monthly allowance may in the discretion of my said trustee be increased to not to exceed $400 per month.

"(g) At the termination of said trust to deliver and convey the residue remaining of my said estate to my daughter, Nellie M. Lemon, and my grandson, Visco Frank Lemon, in equal shares or to the survivor of them, in case of the death of one, and in case of the death of the survivor before the expiration of said trust leaving issue, such issue to take its parent's share, but if the survivor leaves no issue, then and in that event to pay over and deliver the residue of my said estate to my lawful heirs to be ascertained and determined by the proper court.

"Sixteenth. I further request and direct that the other real estate, I now own, be held, managed and leased during the period of the trust, except that lot 9 of the eastern addition to the city of Pontiac, Michigan, also the west half of lot 50 and the west 30 feet of the north 45 feet of lot 51 of the original plat of the city of Pontiac, Michigan may be sold by my executor and trustee, provided the approval of the sale is obtained from my daughter, Nellie M. Lemon, and my grandson, Visco Frank Lemon, but the remainder of my real estate I request shall be held as an investment, unless unforeseen circumstances arise by which it will be for the best interest of my estate that the same or some part thereof be sold."

The Pontiac Trust Company was appointed executor; the estate was administered; the legacies of specific sums provided in portions of the will, not herein quoted, were all paid by the executor; the final account of the executor was allowed and residue of the estate was assigned on May 26, 1930, in trust to the Pontiac Trust Company as trustee named in the will of deceased. At the inception of the trust, the assets amounted to $344,158.08.

The widow, Josephine C. Woodward, was married to Earl Johnson in May, 1943, and Mr. and Mrs. Johnson lived and cohabited together as husband and wife from that date to the death of Josephine C. Woodward Johnson intestate on February 27, 1948.

The trustee and its successor administered the trust, and filed accounts as trustee in the probate court, which accounts were duly allowed.

The daughter, Nellie M. Lemon, during the period of approximately 17½ years ensuing after the beginning of the administration of the trust, received $44,204 in monthly payments under the will and the widow, Josephine C. Woodward Johnson, received at the hands of the trustee approximately $42,182 from the income of the trust.

The widow, Josephine C. Woodward Johnson, did not file any election not to take under the will, although the statute in force at the time of the progress of the probating of the estate required the widow within a year to make her election not to take under the will, without any provision for notice to her to make her election.[*]  The right was personal with her and ceased at her death.  *Vanderlinde* v. *Bankers Trust Co.*, 270 Mich 599, 605.

At the time of the death of Josephine C. Woodward Johnson, her sole heirs were her husband, plaintiff Earl Johnson, and her granddaughter, plaintiff Josephine A. Bishop.  While Josephine C. Woodward Johnson left a purported last will and testament, the same was disallowed, not having been duly executed.

Josephine C. Woodward Johnson not only received the $42,182 paid her in monthly payments by the trustee but she seems to have had the use, possession and control of the household goods and furniture and of the residence on Auburn avenue in Pontiac, and the trustee seems to have paid the taxes and insurance premiums out of the estate.  We are to infer that the trust set out in the will was fully executed so far as Josephine C. Woodward Johnson

---

[*] See CL 1929, §§ 13084–13086 (Stat Ann §§ 26.233–26.235).— Reporter.

was concerned, completely and entirely, during her lifetime.

Plaintiffs object to the trial court having recourse to the probate files in the estate of Byron V. Woodward, deceased, in making his decision granting the motions to dismiss. However, after detailed recitals as to what had occurred concerning the matter of the estate of Byron V. Woodward, deceased, the bill recites:

"All of which more particularly appears from the files and records of said probate court in said estate, reference to which is hereby prayed."

We conclude that under Court Rule No 17, § 5 (1945), of our court rules, the probate files and records being public records, were, in practical effect, a part of the pleading.

Plaintiffs claim that the trust in question contravenes the provision of the statute prohibiting the suspension of the absolute power of alienation of land beyond two lives in being at the creation of the estate and violates the rule against perpetuities.

Defendants do not deny that the trust provisions of the will do violate the statute prohibiting suspension of the absolute power of alienation of land and the rule against perpetuities. Defendants by their motions claim the benefit of the statute of limitations, and further claim that the plaintiffs are bound by the laches of their privy, and are estopped.

Plaintiffs have no right or standing in respect to the matters of the estate of Byron V. Woodward, deceased, excepting through the deceased widow, Josephine C. Woodward Johnson. As we have heretofore said, Josephine C. Woodward Johnson did not elect to take under the statute and chose to take under the will. She accepted the provisions of the will and the same were fully performed as to her by the trustee during her lifetime. Therefore she must be

treated as having fully accepted the provisions of the will and estopped herself to deny the validity of the trust or to question the provisions of the will in any manner. The plaintiffs claim only through her and her estoppel operates to estop the plaintiffs as fully as though they themselves had participated therein.

Plaintiffs allege in their amended bill that their privy, Josephine C. Woodward Johnson, relied on the advice of Pontiac Trust Company, the executor and trustee under the will, and that the executor and trustee advised her that she was only entitled to a widow's allowance and the provisions for her under the will. Plaintiffs do not allege when the advice was given her, whether before the probation of the estate was ended and residue assigned, or later, or whether before or after her right to elect not to take under the will had expired. Plaintiffs do not allege what officer of the trust company gave such advice. Plaintiffs, however, do allege that Josephine C. Woodward Johnson refrained from opposing the will of her husband, decedent Woodward, out of regard for the feelings of Nellie M. Lemon and in order not to cause family discord. Apparently, therefore, she knew, regardless of the advice of the trust company, that she could oppose the will if she saw fit. Plaintiffs do not allege that she refrained from opposing the will because of the advice of the trustee.

Plaintiffs in their statement of questions involved do not include fraud by reason of the advice of the trust company as being involved in this appeal, nor specifically allege in their statement of reasons and grounds of appeal that the trial court failed to find such fraud. Under all the circumstances, we conclude to give plaintiffs no relief on account of the claimed incorrect or fraudulent advice of the trust company.

Plaintiffs claim that because a misstatement occurred in the testimony at the hearing on the final account of the executor concerning the nature of the trust, that the court was acting upon false testimony and that the consequent order assigning the residue to the trustee is to be treated as void because founded upon false testimony. This objection refers to the following question and answer:

"*Q.* The will provides that the residue be left in trust with the Pontiac Trust Company during the lives of certain persons?
"*A.* Yes."

It will be seen that this question and the answer thereto, together do not properly indicate the nature of the trust. However, we cannot on that account at this late day set aside the order of the probate court, dated May 26, 1930. We cannot assume that the probate judge did not read the will before he signed the order turning the residue of the estate over to the trustee under the will nor that he did not have a just comprehension of the terms and meaning of the will. See *Heap* v. *Heap,* 258 Mich 250, 259.

The order of the probate court made on May 26, 1930, assigned the residue of the estate, "to Pontiac Trust Company as trustee, in trust, in accordance with the terms of the will of said deceased."

In *Glover* v. *Reid,* 80 Mich 228, we say at page 232:

"We think the probate court had jurisdiction to construe the will. Such power is necessarily involved in the power to assign the estate of a testator on the settlement of an executor's account."

In *Dudley* v. *Gates,* 124 Mich 440, we say at pages 441, 442:

"After the estate is settled and is before the probate court for distribution, it must be distributed

according to the terms of the will, which is the sole guide for the court in its order of distribution. The probate court then has jurisdiction to interpret the various provisions of the will, but not otherwise."

In *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich 563, we say at page 580:

"The allowance of a final account of an executor may be conclusive as to receipts and disbursements, but even the allowance of a final account may not amount to a construction of the will.

"*If, however,* upon the conclusion of the probate of the estate of a testator, upon the allowance of the administrator's final account, *the assignment of the residue of the property of the estate is made in accordance with the construction of the will of the deceased by the probate court, then, under such circumstances,* the court having to construe the will in order to make a proper order of distribution, *such order of distribution* properly entered *is valid and binding as a construction of the will,* if not appealed from." (Italics supplied.)

Under the authority of *Chapin* v. *Chapin,* 229 Mich 515, the order of the probate court in the case at bar assigning the residue to the trustee under the will was *res judicata.*

Plaintiffs are estopped by the order of the probate court and by the actions of their privy, Josephine C. Woodward Johnson, whose actions amounted to a recognition of the trust as though valid, and who received at the hands of the trustee in her lifetime, all that the will gave her. Plaintiffs have no greater interest than Josephine C. Woodward Johnson had at her death.

The order dismissing the bill of complaint is affirmed. Costs to defendants.

Sharpe, C. J., and Bushnell, Boyles, North, Dethmers, Butzel, and Carr, JJ., concurred.